UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number:  07-23006-CIV-MARTINEZ-BROWN**

MILES SWANSON,
        Plaintiff,

vs.

CITY OF MIAMI, et al.,
        Defendants.
_____/

## <u>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS</u>

THIS CAUSE came before the Court upon Broward Sheriff Al Lamberti's and

Christopher Hickox's Motion to Dismiss First Amended Complaint (D.E. No. 21), Defendant

City of Miami's Motion to Dismiss Count Six of the First Amended Complaint (D.E. No. 22),

Defendant Officer Gonzalez's Motion to Dismiss (D.E. No. 37), and Defendant Navarro's Motion

to Dismiss Amended Complaint (D.E. No. 53).  Plaintiff Miles Swanson ("Plaintiff" or

"Swanson") has filed suit against Defendants the City of Miami, Sheriff Al Lamberti in his

official capacity of Sheriff of Broward County ("BSO"),[1] Officer J. L. Gonzalez in his individual

capacity as an officer with the Miami Police Department ("Gonzalez"), Officer C. Hickox in his

individual capacity as an officer with the Broward Sheriff's Office ("Hickox"), and Officer R.

Navarro in his individual capacity as an officer with the Miami Police Department ("Navarro"),

alleging violations of 42 U.S.C. § 1983 and state law claims for assault and battery and false

arrest.  All Defendants now move to dismiss the claims asserted against them pursuant to Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[1]"BSO" is an abbreviation for the Broward County Sheriff's Office.  As this suit has been filed against
Broward County Sheriff Al Lamberti in his official capacity, it is actually a suit against the Broward County Sheriff's
Office.

After careful consideration, the Court denies Defendants' motions to dismiss.

## I. Relevant Factual and Procedural Background

Plaintiff's civil action arises from events surrounding the Free Trade Area of America's ("FTAA") ministerial meetings held in Miami, Florida in November 2003.  Plaintiff alleges that in preparation for the anticipated FTAA demonstrations, numerous governmental agencies including the Miami-Dade Police Department and the BSO developed and implemented a joint security plan.  (D.E. No. 20, First Amended Complaint at ¶¶ 1,13, & 25). As a part of this plan, Defendants agreed "to 'submit to a single plan and a single command,' with Defendant City of Miami and Miami Police Chief Timoney in a 'primary leadership role.'"  *Id*. at ¶ 25. As a part of this plan, the City of Miami, the Miami Police Department, and the FTAA Legal Training Committee developed Rules of Engagement each agency was required to follow.  *Id*.

Plaintiff alleges that this plan provided for the agencies "to engage in unconstitutional preemptive arrests intended to be a back-door way to coerce information for federal and local government databases on lawful First Amendment activity, to disrupt lawful expressive activities in advance of their occurrence and round up political activists and lock them up in the absence of probable cause." *Id*. at ¶ 29.[2]  This plan was a "plan to preempt political protest." *Id*. at ¶ 1. Plaintiff alleges that as a part of this plan "law enforcement utilized roving groups of undercover police or 'snatch squads,'  ostensibly dressed as protestors, who targeted, extracted and isolated certain demonstrators." *Id*. at ¶ 14.  Plaintiff alleges that "[i]n this climate of lawlessness, over

---

[2]In connection with this plan, "local law enforcement command officials were trained in a 40-hour federal Office of Domestic Preparedness course entitled Managing Civil Actions in Threat Incidents." *Id*. at 30.  The commanders then trained the subordinates.  *Id*.  The training included instruction on formation and arrest tactics.  *Id*.

200 people were arrested, with over 200 prosecutions and no convictions." *Id*. "Plaintiff was

one of those arrested." *Id*.

Plaintiff Swanson traveled to Miami from Washington, D.C. to attend the demonstrations

held outside the FTAA ministerial meetings. *Id*. at ¶ 5. Specifically, Plaintiff attended the

demonstrations as a legal observer for the National Lawyers Guild. *Id*. He was "present to

observe and document law enforcement interactions with political protestors in the area of the

Bayfront Park Amphitheater." *Id*. At some point in the afternoon, Plaintiff identified a number

of undercover police officers to a group of "peaceful protestors." *Id*. at ¶ 1, 15.

Approximately three hours later, Plaintiff "was lawfully walking [with two other

individuals] northbound on the sidewalk at N.W. 1st Avenue, near N.W. 16th Street at a little

after 5:00 p.m., and not in the vicinity of, or participating in, any sort of protest activities." *Id*.

As he was walking down the street, a van with a New York license plate pulled up beside him,

and three undercover police officers got out and began to assault him. *Id*. Plaintiff alleges that

"[t]he officers were now dressed in black full body gear with facial coverings to hide their

identities and agencies, but by their remarks, referring to the earlier time when Plaintiff identified

them as undercover officers, [they] made clear that they were the same individuals with whom

Plaintiff had contact hours earlier in another location." *Id*. Plaintiff alleges that "[t]he masked

officers attacked . . . [him], knocked him to the ground and continued assaulting him as they

handcuffed him, then dragged him into the police van and told the two people with Plaintiff, who

witnessed the entire event to 'get the fuck out of here.'" *Id*. Plaintiff alleges that he offered no

resistance to the officers' assault. *Id*.

Plaintiff states that after he was dragged to the van and handcuffed, the officers gave each

other high-five hand slaps.  *Id*. at ¶ 20.  They then threatened him with words to the effect:

'Welcome to Miami, motherfucker. This is what you get when you fuck with us,' and 'If you

manage to get out of here tonight and I see you, I'll fucking kill you.'"  *Id*. Plaintiff was then taken

to a police station where he was "interrogated by at least three officers from the undercover squad

which had snatched, arrested and assaulted him."  *Id*. at ¶ 21.  The officers, however, continued

to wear their facial masks during the interrogation and never identified themselves to Plaintiff.

*Id*.  Plaintiff alleges that "the officers kept their faces, badges and any other identifying

information covered so that they could operate with impunity in violating Plaintiff's

constitutional rights and meting out punishment for a perceived wrong by Plaintiff, which in fact,

was speech protected by the First Amendment."  *Id*.

Plaintiff Swanson was charged with five counts of obstruction of justice without violence

"based on his identification to protestors of undercover officers present on Biscayne Boulevard."

*Id*. at ¶ 5.  *See also id*. at ¶ 18.  His charges were later reduced to a single count of obstructing

justice without violence.  *Id*. at ¶ 18. On the advice of counsel, Plaintiff states that he entered into

"an agreement to pay a fine in exchange for adjudication withheld."  *Id*.  Plaintiff  later moved to

vacate the judgment and sentence and such motion was granted.  *Id*.  The charges against

Plaintiff were dismissed *nolle prosequi* in October, 2007.  *Id*.

On November 19, 2007, Plaintiff filed suit against Defendants.  *See* (D.E. No. 1,

Complaint).  The operative complaint is the First Amended Complaint, which alleges section

1983 claims based upon violations of the First, Fourth, and Fourteenth Amendments and state

law claims for assault and battery and false arrest.  *See* (D.E. No. 20, First Amended Complaint).

Each of the individual Defendant officers named in the Complaint signed Plaintiff's arrest

affidavit, which Plaintiff states contains false information.[3]  *Id.* at ¶ 15.  Plaintiff alleges that

these individual Defendant officers were present at his beating and arrest.  *Id.*  Plaintiff, however,

is unsure whether the individual officers were actually the ones who beat him as there were also

officers present at his beating who just stood and watched him be beaten.  *Id.*  Defendants have

now moved to dismiss the counts asserted against them.

## II.  Legal Standard

Defendants have moved to dismiss the First Amended Complaint for failure to state a

claim upon which relief may be granted pursuant to Rule 12(b)(6).   When reviewing a complaint

under Rule 12(b)(6), the court accepts all well-pleaded allegations as true and views the motion

in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73

(1984).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct.

1955, 1964 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus,

a plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct.

at 1964-65. Factual allegations must be enough to raise a right to relief above the speculative

level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in

---

[3]Specifically, the arrest form narrative states that the undercover officers were surrounded
by demonstrators after Plaintiff publicized the fact that they were undercover officers.  *Id.* at ¶ 16.
Plaintiff alleges that this did not occur because "the officers stayed and threatened Plaintiff at that
time." *Id.*

fact)." *Id*. at 1965.

### III.  Analysis

Defendants have made numerous arguments in moving for the dismissal of Plaintiff's

First Amended Complaint for failure to state a claim upon which relief can be granted.  The

Court addresses each argument pertaining to the dismissal of a particular type of claim or the

complaint as a whole without regard to whether the argument was raised by a particular

Defendant.  A number of identical issues pertain to multiple Defendants, and Plaintiff has been

given sufficient opportunity to address each argument.  In addition, for the most part, Defendants

have adopted each other's arguments in moving for dismissal.

#### A.      Shotgun Pleading

First, Defendants argue that the First Amended Complaint is an impermissible "shotgun

pleading" and should be dismissed.  A shotgun complaint is one that "contains several counts,

each one incorporating by reference the allegations of its predecessors, leading to a situation

where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal

conclusions." *Strategic Income Fund, L.L.C. v. Spear, Lineeds & Kellogg Corp*., 305 F. 3d 1293,

1295 (11th Cir. 2002).  In considering a "shotgun pleading" it is "virtually impossible to know

which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd.

of Trustees of Cent. Fl. Comm. College*, 77 F.3d 364, 366 (11th Cir.1996). While Plaintiff does

include a boilerplate sentence at the beginning of each count incorporating all previous

paragraphs and the Court notes that such type of pleading is disfavored, the Court does not find

Plaintiff's First Amended Complaint to be incomprehensible.  The Court finds that each count

sets forth its own discrete cause of action independent of the incorporation, and the Court

declines to dismiss or strike the First Amended Complaint on this basis.

**B.      Section 1983 Claims Against Individual Officers**

Next, Defendants argue that the claims asserted against the individual officers should be dismissed. Plaintiff asserts three section 1983 claims against Defendants Hickox, Gonzalez, and Navarro in their individual capacity.  Count One alleges a violation of Plaintiff's First Amendment rights, Count Two alleges a violation of Plaintiff's Fourth Amendment rights, and Count Three is a claim for conspiracy to violate civil rights.  Defendants argue that these claims should be dismissed because the allegations are not specific enough and because the individual Defendants are entitled to qualified immunity.  After careful consideration, the Court denies Defendants' motions to dismiss these claims.

**1.      Sufficiency of the Pleading**

Defendants argue that the allegations in the First Amended Complaint are not specific enough because it is unclear what specific actions each officer is alleged to have taken and because the allegations of conspiracy in Count Three have not been plead with sufficient particularity.  After careful consideration, the Court finds that the First Amended Complaint contains sufficient allegations against the individual officers.

It is well established in this Circuit that claims under section 1983 against individuals who may assert qualified immunity as a defense are subject to a heightened pleading standard. *Danley v. Allen*, 540 F. 3d 1298, 1313-14 (11th Cir. 2008).  Here, the Court finds Plaintiff has met this standard.  With regard to the First Amendment violation in Count One, Plaintiff alleges that in November 2003, the individual Defendants acted pursuant to the plan developed for the FTAA events and "arrested Plaintiff without reasonable suspicion or probable cause in retaliation

for the exercise of [his] First Amendment rights to express opposition to the FTAA policies, to

identify government agents in the midst of lawful protests, and to associate and assemble with

others who were in opposition to the FTAA."  (D.E. No. 20, First Amended Complaint at ¶ 33).

In Count Two where Plaintiff has alleged a Fourth Amendment violation, Plaintiff alleges that

the individual Defendants violated his rights by "seizing . . . [him] arresting him with excessive

force and without probable cause, and assaulting and battering him."  *Id.* at ¶ 38.  Finally, in

Count Three where Plaintiff has alleged a claim for conspiracy to violate his civil rights, Plaintiff

alleges that both his First and Fourth Amendment rights were violated when the individual

Defendants entered "into an agreement to go upon the road for the purpose . . . of seizing, beating

and arresting Plaintiff, all without probable cause, as punishment for his exercise of his First

Amendment rights."  The Court finds these actions described in the three counts sufficiently

identify the conduct which Plaintiff alleges caused his violations.

The Court disagrees with Defendants' arguments that Plaintiff is required to describe

what specific conduct is attributable to each specific Defendant.  In each count, Plaintiff has

described the individual Defendants' conduct together because he is alleging that they acted in

concert.  Thus, if Plaintiff were to describe the actions of each Defendant separately he would be

needlessly repeating allegations.

Defendants focus on the fact that Plaintiff has alleged that some of the officers stood by

while he was being beaten, and Plaintiff has failed to identify which officers were not directly

involved in the beating.  The Court, however, does not find Plaintiff's allegations relating to the

Fourth Amendment insufficient because Plaintiff is uncertain at this time whether each of the

specifically named Defendants participated in his beating or whether a particular Defendant was

one of the officers who stood by and watched his beating.  As Plaintiff acknowledges in his complaint, he can state a claim for excessive force in violation of the Fourth Amendment against those officers who personally participated in the beating, and a claim for failure to intervene in a Fourth Amendment violation for those officers who stood and watched.  *See* (D.E. No. 20, First Amended Complaint at ¶ 15).  Moreover, the Court finds that where, taking Plaintiff's allegations as true, Defendants deliberately disguised their identities it is not in the interests of justice to reward Defendants with a dismissal pursuant to Rule 12(b)(6).  See *Rauen v. City of Miami*, No. CV 06-21182, 2007 WL 686609, at *4 (S.D. Fla. March 2, 2007) (declining to dismiss claims against Defendants even though Plaintiffs could not identify specific officers where said officers deliberately disguised their identities).  As discovery progresses and if the parties deem it relevant, the parties may present further information in their summary judgment motions regarding the identity of the officers that allegedly participated in the beating and the identity of the officers who allegedly failed to intervene.

Defendants also argue that Plaintiff has failed to state a claim in Count Three for conspiracy to violate civil rights.  Defendants argue that Plaintiff has failed to plead this claim with sufficient particularity because it is unclear how or when the alleged conspiracy was entered into.  After careful consideration, the Court finds Plaintiff has sufficiently stated a claim for conspiracy to violate civil rights in Count Three.

In order to state a claim for a conspiracy under section 1983, Plaintiff must allege "1) an agreement between two or more state actors or a state actor and a private entity; 2) to act in concert to inflict an unconstitutional injury; and 3) an overt act done in furtherance of that goal, and causing some harm."  *Craven v. Florida*, No. 6:08-CV-ORL-19, 2008 WL 2856830, at *5

(M.D. Fla. July 22, 2008) (quoting *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp.2d 15, 24 (E.D.N.Y.2006)) (internal quotation marks omitted).  In addition, "[a] plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists."  *Hansel v. All Gone Towing, Inc.*, 142 Fed. Appx. 308, 309 (11th Cir. 2005).  "Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss."  *Id.*

In Count Three, Plaintiff alleges that the individual Defendants entered "into an agreement to go upon the road for the purpose of . . . seizing, beating and arresting Plaintiff, all without probable cause as punishment for this exercise of his First Amendment rights, all of which they did to Plaintiff on the afternoon of November 20, 2003.  (D.E. No. 20, First Amended Complaint at 44).  Plaintiff alleges that in carrying out the conspiracy Defendants disguised their appearance and later signed the "false" arrest affidavit attached to the complaint.  *Id.*  Plaintiff also alleges that "[a]s a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered loss of liberty, physical pain, pain and suffering, embarrassment, anguish, costs of defense to criminal charges, loss of property and other losses."  *Id.* at 47.  These allegations are sufficient to state a claim for a section 1983 conspiracy.  Accordingly, the Court finds the allegations regarding the section 1983 claims against the individuals in the First Amended Complaint are sufficient.

## 2.   Qualified Immunity

All of the individual Defendants have also asserted that they are entitled to qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311

F. 3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   In order to receive qualified immunity, Defendants must first demonstrate that they were acting within their discretionary authority.  *Al-Amin v. Smith*, 511 F. 3d 1317, 1324 (11th Cir. 2008). Here, Plaintiff has not disputed that all Defendants were acting within their discretionary authority.

Once Defendants establish that they were acting within their discretionary authority, the Court must first determine whether "the plaintiff's allegations, if true establish a constitutional violation."  *Id*.  "If a constitutional right would have been violated under plaintiff's version of the facts, the next question is whether the constitutional right was clearly established."  *Id*.  In evaluating whether the law was clearly established, "the salient question . . . is whether the state of the law . . . [at the time of the violation] gave respondents fair warning that their alleged treatment [of the Plaintiffs] was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  In the Eleventh Circuit, "when case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state."  *Marsh v. Butler County*, 268 F. 3d 1014, 1032, n.10 (11th Cir. 2001) (en banc).

Here, Defendants argue that no First Amendment violation or Fourth Amendment violation for wrongful arrest occurred because Defendants had probable cause to arrest Plaintiff. In the alternative, Defendants argue that even if there were constitutional violations, such violations were not clearly established because the officers had at least arguable probable cause to arrest Plaintiff.  With regard to the Fourth Amendment excessive force claims, Defendants have argued that no constitutional violation occurred because only de minimis force was used in

arresting Plaintiff.  After careful consideration and taking the allegations in the complaint as true, the Court finds this case should not be dismissed against the individual Defendants on the basis of qualified immunity.

Defendants argue that they are entitled to qualified immunity on the wrongful arrest claims because they had probable cause or at the least arguable probable cause to arrest Plaintiff. Plaintiff has claimed that the officers wrongfully arrested him without probable cause in retaliation for him exercising his First Amendment rights.   "The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause." *Crosby v. Monroe County*, 394 F. 3d 1328, 1332 (11th Cir. 2004).  An arrest without probable cause is unconstitutional.  *Jones v. Cannon*, 174 F. 3d 1271, 1283 (11th Cir. 1999).   Thus, here where Plaintiff has claimed that the officers wrongfully arrested him without probable cause, the existence of probable cause would mean that the arrest was not unconstitutional and thus, there was no constitutional violation.

 "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Crosby v. Monroe County*, 394 F. 3d at 1332 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).  In a case such this, however, where qualified immunity is at issue, the relevant inquiry is whether the officers had "arguable probable cause."  *Id*. at 1332-33. Arguable probable cause is a lower standard than actual probable cause and "exists if, under all of the facts and circumstances, an officer reasonably could-not necessarily would-have believed that probable cause was present." *Id*. at 1332.  Thus, when determining whether an officer has arguable probable cause the "inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could

have believed that probable cause existed, in light of the information the officer possessed."

*Montoute v. Carr*, 114 F. 3d 181, 184 (11th Cir. 1997). Here, Defendants argue that they had

arguable probable cause to arrest Plaintiff for obstruction of justice in violation section 843.02,

Florida Statutes, and for inciting or encouraging a riot in violation of section 870.01, Florida

Statutes.[4]  In considering the allegations in the Complaint as true, this Court finds neither statute

provides Defendants with even arguable probable cause.

Section 843.02 is a criminal statute which prohibits the obstruction of justice.  Section

843.02 provides:

> Whoever shall resist, obstruct, or oppose any officer . . . or other person legally
> authorized to execute process in the execution of legal process or in the lawful
> execution of any legal duty, without offering or doing violence to the person of
> the officer, shall be guilty of a misdemeanor of the first degree.

Thus, taken from the plain language of the statute, "[t]o support a conviction pursuant to §

843.02, the state must prove: '(1) the officer was engaged in the lawful execution of a legal duty;

and (2) the action by the defendant constituted obstruction or resistance of that lawful duty.'"

*Davis v. Williams*, 451 F. 3d 759, 764 (11th Cir. 2006) (quoting *Slydell v. State*, 792 So.2d 667,

671 (Fla. 4th DCA 2001); *S.G.K. v. State*, 657 So.2d 1246, 1247 (Fla. 1st DCA1995)).

First, as the facts have been pleaded in this case, at the time Plaintiff identified the

undercover officers to the other demonstrators, the officers were not engaged in the lawful

execution of a legal duty.  At the time Plaintiff identified the undercover officers to

demonstrators, Plaintiff alleges that the undercover officers were in the presence of "peaceful

---

[4]Plaintiff was specifically arrested for obstruction of justice which is a violation of section
843.02.  The Court, however, may consider Plaintiff's conduct as a violation of section 870.01
as"[t]he validity of an arrest does not turn on the offense announced by the officer at the time of
the arrest."  *Bailey v. Bd. of County Comm'rs*, 956 F. 2d 1112, 1119 n.4 (11th Cir. 1992).

demonstrators." (D.E. No. 20, First Amended Complaint at §§ 1, 15).  There is no indication that the officers were in the lawful execution of any legal duty.  Rather, taking the allegations from the complaint as true, officers were "merely on the job." *D.G. v. State*, 661 So. 2d 75, 76 (Fla. 2d DCA 1995).

In addition, "Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under § 843.02." *Davis v. Williams*, 451 F. 3d 759, 765 (11th Cir. 2006) (citing cases).  "Words alone may result in obstruction of justice where the officer in question is 1) serving process; 2) legally detaining a person; or 3) asking for assistance."  *Francis v. State*, 736 So. 2d 97, 99 n.2 (Fla. 4th DCA 1999). None of these factual situations are applicable to the facts as alleged.

The Court acknowledges that Plaintiff attached an arrest affidavit to his First Amended Complaint and that in this arrest affidavit the officers make a conclusory statement that at the time Plaintiff identified them they were "legally authorized to execute the process of law and were in such process."  (D.E. No. 20, First Amended Complaint, Exh. A).  The Court also acknowledges that in this affidavit the officers state that they were in the midst of a violent demonstration at the time that Plaintiff identified them and that his identification endangered them.  *Id*.  Plaintiff, however, specifically states in his First Amended Complaint that this attached affidavit is false, that the demonstrators were peaceful, and he denies having endangered the officers by revealing that they were in fact undercover police officers.  (D.E. No. 20, First Amended Complaint at §§ 1, 15, 16).  In considering Defendants' motions to dismiss, the Court must take Plaintiff's allegations as true and thus, the Court finds Defendants did not have probable cause or arguable probable cause to arrest Plaintiff for obstruction of justice.

-14-

Section 870.01, Florida Statutes, is a criminal statute that provides "[a]ll persons guilty of a riot, or of inciting or encouraging a riot, shall be guilty of a felony of the third degree."  The Florida Supreme Court has stated that the term riot

> is defined as a tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent, either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner.

*State v. Beasley*, 317 So. 2d 750, 752 (Fla. 1975).  Moreover, the Florida Supreme Court has clarified that in order to incite a riot "the words uttered by such person or the act done by him must be such as to support a finding that they were said or done with intent to provoke a riot." *Id*.  The court has also recognized that this statute cannot interfere with a person's right to free speech, and thus, in order for the statute to be constitutional, "the words used must be such that they advocate violence and tend to incite an immediate breach of the peace."  *Id*.

In this case, the facts as alleged do not even support that there was a riot.  As stated above, Plaintiff states that the demonstrators were peaceful.  (D.E. No. 20, First Amended Complaint at §§ 1, 15).  Moreover, the allegations do not indicate that Plaintiff identified the undercover police officers to provoke a riot nor that they were used to advocate violence or to incite an immediate breach of the peace.  Plaintiff states that there is no evidence to support the officers' contention in their allegedly false affidavit that they were surrounded by thirty demonstrators and had to flee after Plaintiff identified them.  *Id*. at ¶ 16.  Plaintiff alleges that this did not occur because after he identified the undercover officers "the officers stayed and threatened Plaintiff."  *Id*. Thus, the Court finds in considering the motions to dismiss that Defendants did not have probable cause or arguable probable cause to arrest Plaintiff for inciting

or encouraging a riot.

The Court also finds that as the facts have been pleaded in this case, the constitutional violations with regard to the wrongful arrest were clearly established.  The United States Supreme Court has stated that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  The Supreme Court has stated:

> Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute . . . is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

*Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).  As alleged, there are no allegations that Plaintiff's speech in the presence of peaceful protestors presented a "danger of a serious substantive evil."  Accordingly, the Court does not grant Defendants qualified immunity at this time.[5]

Finally, Defendants have also argued that they are entitled to qualified immunity on Plaintiff's excessive force claims because no constitutional violation occurred as only de minimis force was used in arresting Plaintiff. "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."  *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003).  Thus, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).  The Court, however, finds that the facts as alleged demonstrate that the officers used more than de minimis

---

[5]The Court notes that the Court's resolution of this issue on a motion for summary judgment may be very different.  At this time, however, the Court must only consider the allegations in the First Amended Complaint, and it must accept those allegations as true.

-16-

force.

Specifically, Plaintiff alleges that he was lawfully walking down the street when a van pulled up beside him and three masked officers got out and started beating him.  (D.E. No. 20, First Amended Complaint at ¶ 15). Plaintiff alleges that the officers knocked him to the ground and continued to assault him as they handcuffed him.  *Id*.  He was then dragged to the van and threatened.  *Id*.  Plaintiff alleges that during this altercation he offered no resistance to the officers.  *Id*.  In considering these facts as alleged, the Court finds Plaintiff has sufficiently alleged a violation of his Fourth Amendment right to be free from the use of excessive force in the course of an arrest.  Thus, the Court denies Defendants' motions to dismiss the section 1983 claims asserted against the individual Defendants.

**B.     *Monell* Claims**

Next, Defendants move to dismiss Counts Six and Seven, which are section 1983 claims brought against Defendants the City of Miami and the BSO pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Defendants argue that Plaintiff has not stated claims in these counts because he has not sufficiently alleged the existence of an unconstitutional policy or custom, he has not sufficiently alleged that there is causal link between the municipal action and the deprivation of federal rights, and because he has not sufficiently alleged that the City of Miami and the BSO had notice of the need to train or supervise.  After careful consideration, the Court finds Plaintiff has sufficiently alleged *Monell* claims against the City of Miami and the BSO in Counts Six and Seven.

*Monell* provides that while a municipality may not be liable under theories of vicarious liability or respondeat superior for constitutional violations under section 1983, a municipality

may be sued under section 1983 if "the action that is alleged to be unconstitutional implements or

executes a policy, statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." *Monell*, 436 U.S. at 690.  A plaintiff may demonstrate that

a municipality has such a policy by identifying "(1) an officially promulgated county policy or (2)

an unofficial custom or practice of the county shown through the repeated acts of a final

policymaker for the county." *Grech v. Clayton County, Ga.*, 335 F. 3d 1326, 1330 (11th Cir.

2003).  "Custom consists of those practices of city officials that are 'so permanent and well

settled' as to have 'the force of law.'" *Gilmere v. City of Atlanta, Ga*., 737 F. 2d 894, 902 (11th

Cir. 1984) (quoting *Monell*, 436 U.S. at 691). "Failure to properly train municipal police officers

is considered a 'policy or custom' that gives rise to § 1983 liability when such failure reflects

deliberate indifference to the constitutional rights of municipal inhabitants." *McKinney v.*

*DeKalb County, Ga*., 997 F.2d 1440, 1442 (11th Cir.1993).  Finally, "[t]he governmental custom

or policy involved must be the 'moving force' behind the alleged constitutional violation."

*Hamilton v. City of Jackson*, 508 F. Supp.2d 1045, 1056 (S.D. Ala. 2007).

       The Court finds Plaintiff has sufficiently stated a claim against the municipalities for

liability under section 1983.  There is no heightened pleading requirement when alleging a

section 1983 claim against a municipality. *Leatherman v. Tarrant County Narcotics Intelligence*

*& Coordination Unit*, 507 U.S. 163, 168 (1993).   Plaintiff has sufficiently alleged a policy or

custom when he alleges the City of Miami and the BSO's adoption of the joint operational plan

for law enforcement operations at the FTAA in November 2003 and Defendants' adoption of

mutual aid agreements. *See* (D.E. No. 20, First Amended Complaint at ¶¶ 58, 63).  In addition,

with respect to the BSO, Plaintiff alleges that they also enforced their own unconstitutional

operational plan.  *Id*. at ¶ 64.  Thus, the Court finds Plaintiff has sufficiently alleged the existence of an unconstitutional policy or custom.

The Court also finds that Plaintiff has sufficiently alleged a causal link between the policies or customs and the constitutional violations. In Counts Six and Seven, Plaintiff alleges that the policies discussed above were put in place "to preempt political protest."  (D.E. No. 20, First Amended Complaint at ¶¶ 57, 63, 64).  *See also id* at ¶¶ 59, 66.  Plaintiff alleges that the policies that were implemented "were the direct cause of the harm Plaintiff suffered when he was seized with force, handcuffed, thrown into the van and arrest[ed]." *Id*. at ¶¶ 59, 66.  Plaintiff also alleges that "[a]s a direct and proximate result of the polices of the . . . [the City of Miami and the BSO] Plaintiff suffered physical injury, pain and suffering, embarrassment, anguish, costs of defense to criminal charges, loss of property and other loss, entitling him to compensatory damages against the . . . [City of Miami and the BSO]."  *Id*. at 61  Thus, the Court finds Plaintiff has sufficiently alleged causation.

Finally, the Court also finds Plaintiff has sufficiently alleged a failure to train claim against the City of Miami and the BSO despite their failure to specifically allege that Defendants were on notice of the need to train.  Plaintiff alleges that the City of Miami and the BSO as a part of their joint plan "failed to train its officers properly in the lawful exercise of First Amendment rights, the limitations on undercover officers' actions in the field, the impermissible use of force to punish an individual prior to arraignment, and other physical actions against arrestees, and the probable cause for arrest." *Id*. at ¶¶ 57, 63.  These allegations in Counts Six and Seven along with the allegations relating to causation and the relief sought are a short and plain statement of Plaintiff's claim in accordance with Federal Rule of Civil Procedure 8(a).  While Plaintiff will

-19-

have "to present some evidence that the municipality knew or should have known of a need to

train and/or supervise in a particular area ," *Tennant v. Florida*, 111 F. Supp. 2d 1326, 1332-33

(S.D. Fla. 2000),  specific allegations of notice are not required.  *See Leatherman*, 597 U.S. at

168 (noting that in section 1983 claims brought against municipalities all that is required is a

short plain statement of a claim). *See also Maniaci v. Georgetown University*, 510 F. Supp. 2d

50, 64 (D.D.C. 2007) ("At the pleading stage, only an allegation of the existence of a policy,

practice, or custom and its causal link to the constitutional deprivation suffered is required.").

Thus, the Court denies Defendants' motion to dismiss Plaintiff's *Monell* claims.[6]

**C.      State Law Claims**

Defendants also moved to dismiss Counts Four and Five in which Plaintiff has alleged

state tort law claims for assault and battery and false arrest against the individual Defendants.

Defendants argue that this Court should apply the heightened pleading standard for section 1983

claims to these state law claims and that these claims do not meet this standard because Plaintiff

has not identified which specific Defendants are responsible for which specific conduct.

Defendants also argue that Plaintiff cannot state a claim for false arrest because Defendants had

probable cause to arrest Plaintiff.  After careful consideration, the Court finds Plaintiff has

sufficiently alleged his state law claims.

First, there is no heightened pleading standard applied to the state law claims asserted

_____

[6]Defendants have also argued that if this Court finds that the individual Defendants have
qualified immunity, the Court is prevented from finding the City of Miami and the BSO liable.
The Court finds this argument is without merit.  It is well-established that municipalities are not
entitled to qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980).  Thus,
a municipal Defendant could still be held liable in a situation where an individual Defendant is
found to have qualified immunity.

against the individual Defendants.  The Court also again rejects Defendants' claims that these claims should be dismissed because Plaintiff is unsure which specific Defendants actually assaulted him and which Defendants stood by and watched him be beaten.  At this stage in the proceedings, the Court finds Plaintiff is entitled to assert this claim against all three Defendants who he alleges deliberately concealed their identities.  *See Rauen,* 2007 WL 686609, at *4 (S.D. Fla. March 2, 2007) (declining to dismiss claims against Defendants even though Plaintiffs could not identify specific officers where said officers deliberately disguised their identities). In addition, as discussed above in section III.B.2, this Court does not find from the allegations in the First Amended Complaint that Defendants had probable cause to arrest Plaintiff.  Thus, the Court also denies Defendants' motion to dismiss Plaintiff's state law claims.

### IV.  Conclusion

Based on the foregoing it is **ORDERED AND ADJUDGED** as follows:

1.     Broward Sheriff Al Lamberti's and Christopher Hickox's Motion to Dismiss First Amended Complaint (D.E. No. 21) is **DENIED**.

2.     Defendant City of Miami's Motion to Dismiss Count Six of the First Amended Complaint (D.E. No. 22) is **DENIED**.

3.     Defendant Officer Gonzalez's Motion to Dismiss (D.E. No. 37) is **DENIED**.

4.     Defendant Navarro's Motion to Dismiss Amended Complaint (D.E. No. 53) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 4 day of February, 2009.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record